### Bernard F. McDermott *vs.* St. Wilhelminia Benevolent Aid Society.

PROVIDENCE—DECEMBER 13, 1902.

PRESENT: Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Estoppel. Voluntary Societies. Contracts.*

Technical variations from rules prescribed by its constitution or by-laws will not relieve a society from liability to outside parties doing business with it in good faith upon the strength of what appeared by the records to have been regularly and properly done.

Article IX of the constitution of a voluntary society provided that the physician of the society should be chosen at the regular elections. Article III, section 4, provided that the election of officers should take place at the regular meetings in January and July. It had been the custom, for some time before the election in question, to elect officers in June and December. Article III, section 6, provided that a candidate should receive a majority of all votes cast.

At a regular meeting in December, 1900, plaintiff was declared elected the physician of the society, and the secretary was directed to notify him thereof. Although plaintiff did not receive a majority of all ballots, he was declared elected; and this was acquiesced in by all the members present. The records stated that plaintiff was elected, "provided he answered the secretary's letter."

December 30 the secretary notified plaintiff of his election; the letter was received by him January 1, and January 3 plaintiff mailed his acceptance. At a special meeting held January 2, another physician was elected, and the secretary was directed to notify plaintiff that his ser-

vices were no longer required. This was received by plaintiff January 4. At a meeting held January 11, it was voted that "all business transacted at our special meeting stand legal," and the physician elected at the meeting of January 2 was declared the physician for the balance of the term :—

*Held*, that, in view of the facts that the president was allowed to declare the plaintiff elected without dissent ; that the record showed that plaintiff was elected at a regular meeting ; and that plaintiff was recognized as holding the office by the action of the society at the meetings of January 2 and 11, the defendants were estopped from setting up technical irregularities as a defence to his right of recovery.

(2)  *Contracts.  Acceptance.*

*Held*, further, that the contract was consummated upon the depositing of the acceptance in the mail, the jury having found it was within a reasonable time.

(3)  *Voluntary Societies.  Principal and Agent.*

*Held*, further, that the individual members of the society were liable for all acts of the society within the scope of its authority, although absent from the meeting at the time such action was taken.

(4)  *Pleading.  Special and General Assumpsit.*

When a contract has been fully executed, and nothing remains to be done but the payment of the price agreed on, the plaintiff may declare specially on the contract, or he may rely on the common.counts in *indebitatus assumpsit.*

(5)  *Contracts.*

Where it appeared that no compensation was expressly fixed at the time of plaintiff's election, and that he had previously served in the same capacity at a given rate, a request to charge that the presumption was that the employment was continued on the terms of the original contract was properly granted. .

(6)  *New Trial.*

A new trial will not be granted, although a request to charge which was not pertinent to the case was allowed, where it appears that the jury were neither confused nor mislead, and returned a verdict for the amount which the plaintiff was entitled to recover, if entitled at all.

Assumpsit.    Heard on petition of defendant for new trial, and petition denied.

Tillinghast, J.    This is assumpsit to recover the sum of $90, which the plaintiff claims to be due and owing to him from the defendants for professional services, under a contract entered into between him and the defendants on the

28th day of December, 1900. The action is brought against the individual members of said society, associated together under the name aforesaid.

At the trial of the case in the District Court of the Sixth Judicial District, a. decision was rendered in favor of the plaintiff for the amount claimed; whereupon the case was taken to the Common Pleas Division for a jury trial upon the defendants' claim therefor, and upon trial in that court the plaintiff recovered a verdict for the full amount of said claim, with interest.

The case is now before us upon the defendants' petition for a new trial on the grounds (1) that the verdict was against the evidence, and (2) that certain rulings of the Common Pleas Division made during the trial were erroneous.

(1)    The plaintiff is a physician, and the defendant society is a voluntary association organized for the purposes of charity.

The plaintiff was first employed by the defendant society in July, 1899, and rendered services during the period for which he was then employed, except that he was ill and absent for a while during the autumn and early winter of 1900, prior to the period now sued for, and his place was taken by a substitute, Dr. Gray. The rate originally agreed upon in 1899 was the same as that now sued for, namely, ten cents a month for each member of the society in financial standing; and no different contract was entered into between the parties at the time when the plaintiff was last elected.

Article IX of the constitution of the defendant society, in force during the period in question, provides as follows:

"Section 1.    There shall be a physician attached to this Society, whom the members can consult at any time.

"Sec. 2.    The physician shall be chosen by the Society at the regular elections of the Society, and shall serve for six months.

"Sec. 3.    The physician shall receive such sum per month, per annum, per member, as may be agreed between him and the Society, from time to time, to be paid at the expiration of each quarter.

"Sec. 4.    The Financial Secretary shall furnish the phy-

34

sician with a list of all members in good standing and entitled to benefits, at the beginning of each year ; also notify him of all who are in arrears and all that have been reinstated.

"Sec. 5.    Every member applying for medical advice must present her card of membership if the Doctor requests her so to do."

Article III, section 4, of the constitution provides that "The election of officers shall take place at the regular meetings in January and July," and article 1 of the by-laws of the society provides that its meetings shall be held on the second and fourth Fridays of each month, at eight o'clock.    It had been the custom, however, for some time before the election in question, to elect officers in June and December.

At the last regular meeting in December, 1900 (held on December 28th), the plaintiff was declared elected the physician of the society, and the president directed the corresponding secretary to notify him of his election.    Although the plaintiff did not receive a majority of all the ballots, he was declared elected the physician of the society ; and this was acquiesced in by all the members thereof who were present at this regular meeting.

The records of the meeting state that the plaintiff was duly elected, "provided he answered the corresponding secretary's letter."    On December 30, 1900, the secretary sent a notice to the plaintiff, by mail, of his election, directing it to Ashton, R. I., from which place it was forwarded to the plaintiff at Providence, where he had returned, and was received by him on January 1, 1901.    On January 3, 1901, the plaintiff duly mailed his acceptance of the offer of contract, made by the society, to the corresponding secretary thereof.    This was done before he received the notice of the withdrawal of the offer of contract by the society, hereinafter referred to.

The plaintiff's substitute, Dr. Gray, in October, 1900, received the list of the society's members, and the plaintiff himself was notified of some members in arrears and of some members in good standing during the period in question.    He testifies that he performed whatever services were required of him during the period for which he was elected, and that

these services included quite an amount of regular profes-
sional work. At a *special* meeting of said society, held on
January 2, 1901, the object of which meeting was to elect a
doctor for the society, Dr. Boucher was elected to that posi-
tion, and the corresponding secretary was directed to notify
the plaintiff that his services were no longer required. At a
subsequent meeting of the society, held on January 11, 1901,
it was "Moved and seconded that all business transacted at
our special meeting stand legal. Moved and seconded that
Dr. Boucher shall be doctor for the balance of the present
term."

In pursuance of the action taken by the society at said special
meeting, the corresponding secretary notified the plaintiff, by
mail, that his services were no longer required. The letter
containing this notice was posted at Providence on January
3, 1901, at 4 P. M., and was received by the plaintiff on the
evening of the following day.

The first point relied on by defendants' counsel is that the
plaintiff is not entitled to compensation for services to indi-
vidual members of the society; that he must stand or fall
upon his right to claim that the contract was entered into
with him on the 28th of December, 1900.

Assuming that by this statement counsel means that in
order to entitle the plaintiff to recover he must prove that he
was legally elected to the office or position of physician to
said society, and that he accepted said office or position be-
fore receiving notice of the withdrawal of the offer made to
him in manner aforesaid, we concur in the position taken.
Moreover, we do not understand that the plaintiff is suing
for compensation for services rendered to individual mem-
bers, but that he is suing simply on the contract which he
claims to have made with the society. His bill shows this.
It is as follows :

"Providence, R. I., July 1, 1901.

"*St. Wilhelmina Benevolent Aid Society, of Providence,*
*R. I., and Branch No. 625 of the C. L. B. U.*
*of America,*

"*To Bernard F. McDermott, M. D.,*                    Dr.

---

"To professional services from January 1, 1901,
   to July 30, 1901, both inclusive, for 150 mem-
   bers of the Society, at ten (10) cents a month
   each, covering a period of six months, in ac-
   cordance with contract with the Society . . . . . $90 00 "

This testimony as to services to individual members was
offered simply for the purposes, as we understand it, of show-
ing that the plaintiff regarded himself as the legally appointed
physician, and also that he had in good faith discharged the
duties imposed upon him as such physician during the period
for which he was employed.

The only question to be considered, then, in connection with
defendants' first point, is whether the plaintiff and the defend-
ant society, representing the defendants individually, entered
into binding contract relations in the premises.    The defend-
ants claim that, being a mere voluntary association, they are
not bound by any contract entered into with the plaintiff un-
less that contract was entered into in strict accordance with
the constitution and by-laws of the association.    And that in
any event those members of the society who were not present
when the election relied on by the plaintiff took place cannot
be held liable unless the action of the society was had in strict
accordance with the constitution and by-laws.

As hereinbefore stated, the plaintiff did not receive a major-
ity of all the votes cast at the meeting of the society held on
December 28, 1900.    The testimony of the defendants' wit-
ness, Julia O'Donnell, the president of the society, who pre-
sided at said meeting, regarding the number of votes cast for
and whom, etc., was that the plaintiff, Dr. McDermott, re-
ceived twenty-three votes, and that Dr. Boucher received

sixteen or seventeen votes. Also, that the plaintiff did not receive a majority of all the votes cast, but that he did receive more than any other candidate, and that no other ballot was taken after the one in which he received the number aforesaid. She also testified that she then declared Dr. McDermott elected and directed the secretary to notify him of his election. No objection was made to these proceedings.

Section 6 of article III of the constitution provides that : "When there are more than two candidates for any office, at every unsuccessful balloting the person receiving the lowest number of votes shall be dropped. The voting shall continue in this manner until one candidate has received a majority over all."

We do not think that the irregularity referred to in connection with the election of the plaintiff as the physician of the society can properly be held to render the action void. It was merely a technical violation of the rule referred to, and it was doubtless competent for the society, if it saw fit, as it evidently did, to dispense with the formality of taking a second vote. Moreover, by allowing the president to declare the plaintiff elected to said position without dissent on the part of any one present, his election was practically made unanimous. Again, the record of the society shows that the plaintiff was elected at a regular meeting thereof. It also shows that at the special meeting held on January 2, 1901, the society recognized the fact that the plaintiff was occupying the position to which he had thus been chosen by directing the secretary to notify him of his discharge therefrom. And at a subsequent meeting of the society, held on January 11, 1901, the plaintiff's election to said position was still further recognized by adopting and ratifying the doings of said special meeting, and by choosing Dr. Boucher as the society physician "for the *balance* of the present term."

In view of all these facts, we think the defendants are clearly estopped from setting up said technical irregularity as a defence to the plaintiff's right of recovery.

It is matter of common knowledge that both corporations and voluntary associations often disregard, to some extent,

the strict rules of procedure prescribed in their charters or by-laws in transacting their internal affairs. But, so far as we are aware, the courts have not held that such technical variation from prescribed forms relieved them from liability to outside parties doing business with them in good faith upon the strength of what appeared, by their own records, to have been regularly and properly done. Thus, in *Fire Insurance Co.* v. *Schettler*, 38 Ill. 166, it was held that, notwithstanding the charter of an insurance company required their contracts of insurance to be executed in a particular mode, yet, if they adopted a different mode and received the benefit of the contract, they would be bound by it.

In the case of *Industrial Trust Company* v. *Green*, 17 R. I. 586, Stiness, J., in delivering the opinion of the court, said : "Many things may be done improperly by an association, but if its members acquiesce in them and go on as though they were right, they will be bound by them." See also 1 Bacon, Benefit Societies, new ed. § 40 ; 2 Mor. Corp. § 752 ; *Henry* v. *Jackson*, 37 Vt. 431. In this connection it is pertinent to remark that it appears that it had been the custom of the defendant society to elect its officers in June and December of each year, instead of electing them in January and July, as required by section 4 of article III of the constitution ; and also its custom had been to choose its physician at the same time, although by section 2 of article IX he is required to be chosen at the time of the regular election. This shows that the association regarded itself at liberty to informally modify its rules to some extent. And therefore it clearly has no ground for complaint when a stranger to its particular methods of transacting business insists that such modifications shall not affect his rights.

(2)     Of course we need cite no authorities in support of the plaintiff's claim that the contract with the defendant society was consummated upon his depositing his acceptance thereof in the mail, as aforesaid, the jury having found, as they must have done, under the instruction of the court, that the acceptance was made within a reasonable time after notice of plaintiff's election.

(3)　As to the contention of defendants' counsel that in any event those members of the society who were not present when the plaintiff's election took place cannot be held liable in this action, we are of the opinion that it is untenable. The presumption is that each person, upon becoming a member of an association of this sort, knows and consents to be governed by the rules thereof.　And hence, whatever action is properly taken thereunder by the association is as binding upon those members who were absent at the time it was taken as upon those who were present.　See *Supreme Lodge, &c.*, v. *Knight*, 117 Ind. p. 496.　This individual liability arises not on the ground that the members of such an association are partners, for they are not (*Textile Workers' Union* v. *Barrett*, 19 R. I. 633), but on the ground that the society is their agent in the premises ; and hence they are bound by its acts if done within the scope of its authority.

In Meacham on Agency, section 69, the author says : " The power of appointing agents may rest with a single individual or with a number of individuals　It rests with a single individual in those cases in which he is the only person authorized to make the appointment, and also in those cases in which he, in common with others or as the representative of others, has the power to make it.　It rests with a number of individuals in those cases where the conjoint action of all is necessary in dealing with the subject matter."

The same author also says, see section 72, in referring to associations, clubs, societies, etc.: " That it is now quite generally settled that such organizations are not partnerships and that the members are not liable as partners, but that their liability is to be determined upon the rules of principal and agent. The principle which applies here is the familiar one that no person can be charged upon a contract alleged to have been made upon his responsibility unless it can be shown that to the making of that contract upon his responsibility, he has given his express or implied assent.

" This assent may be expressed in a variety of ways and at one of several times.　It may have been given in advance by consenting to be bound by all contracts of a certain kind that

may be made in the future; it may be given contemporaneously with the making of the contract; and it may also be inferred from a subsequent ratification. Thus, where it is a part of the scheme or purpose of the organization, as provided by its articles of association, charter, constitution or by-laws, that certain contracts or obligations in behalf and upon the credit of the organization may be entered into either upon the vote of a majority or at the discretion of the committee or officer, or upon any other lawful contingency or event, every person who becomes a member, by so doing impliedly consents in advance, to be bound by any contract or obligation of the kind contemplated, entered into under the circumstances prescribed." See also *Lawler* v. *Murphy*, 58 Conn. 294; *White* v. *Brownell*, 2 Daly, 329.

As what we have thus said covers all of the exceptions taken by defendants' counsel touching the plaintiff's election and his general right of recovery, as well as the particular one above discussed, there is no occasion for considering those exceptions separately.

The defendants' next exception is based upon a ruling of the trial court, whereby the plaintiff was allowed to introduce in evidence a newspaper notice that he had resumed his practice after a period of illness.

At the time of the plaintiff's election to said position it was known to the society that he had been ill, and it is evident that some doubt was entertained by some of the members as to whether he would be able to resume his practice by the first of January, 1901. It was stated by one of the members at said meeting that he would be on duty the first of the new year, as he in fact was. This newspaper notice was referred to by the plaintiff in his formal acceptance of the election in question, and was also before the society on the evening of January 2, 1901, when the order of withdrawal aforesaid was made.

The evident purpose of its introduction was to show that the plaintiff was physically competent to discharge the duties of said office at the time when he was elected. And although its probative force in this direction was evidently very slight,

yet, in view of the circumstances, we cannot say that it was wholly irrelevant. At any rate, it was of such small account that, even if erroneously admitted, it was not of such a character as to have possibly prejudiced the defendants' rights, and hence is no ground for a new trial. *Collier v. Jenks*, 19 R. I. 493 ; *York v. Stiles*, 21 R. I. 225 ; *Schnable v. Public Market*, 24 R. I. p. 480 ; *Ames v. Potter*, 7 R. I. p. 269.

The exception to the refusal of the trial court to instruct the jury that the plaintiff was not entitled to recover, because he had not declared specially on the contract of employment, is clearly untenable.

(4) When a contract has been fully executed, and nothing remains to be done but the payment of the price agreed on, the plaintiff may declare specially on the contract, or he may rely on the common counts in *indebitatus assumpsit*. *Dermott v. Jones*, 2 Wall. 1 ; Ency. Pl. & Prac. vol. 2, 1009, and cases in note 1.

Amongst the plaintiff's requests to charge the jury, which were granted subject to defendants' exceptions, were the following :

"Second. When one enters into the service of another for a definite period and continues in the employment after the expiration of that period, without any new contract, the presumption is that the employment is continued on the terms of the original contract.

"Third. An express request from the defendants to the plaintiff to render services for them implies an agreement on the defendants' part to pay the plaintiff what his services are reasonably worth."

Defendants' counsel states in his brief that he insists upon these exceptions because, while the requests may be true as propositions of law, they had no bearing upon the points in issue in the case, and hence to charge them was to confuse the jury and cause them to believe that other matters were in issue than those that really were, and thereby divert their minds from the real points in issue, which were : was Dr. McDermott duly elected physician, and did he accept within a reasonable time.

(5)    We think the first of said requests was pertinent, because the case shows that no compensation was expressly fixed upon by the society at the time of plaintiff's election.    And as it appears that he had previously served the defendants in the same capacity at a given rate *per capita*, the presumption was, in the absence of any statement or agreement to the contrary, that his compensation would be the same as that previously paid.    *Booth* v. *Rubber Co.*, 19 R. I. 696.

(6)    As to the second of said requests, we fail to see that it was strictly pertinent, because the court had already instructed the jury, and very properly so, that if they found that the plaintiff was entitled to recover, their verdict should be for the sum of $90, with interest.    And this was all he claimed.

Moreover, the court had already refused to instruct the jury, in accordance with the defendants' fifth request, "That Dr. McDermott, if he recovers at all, can only recover what his services are reasonably worth."

But conceding, as we do, that said third request was not pertinent, yet we fail to see that it could have prejudiced the defendants or the jury in the least.    Indeed, it is very evident from the verdict rendered that the jury were neither confused nor misled by the instruction, as they followed the instruction previously given by the court as to the amount, as they clearly should have done under the evidence in the case.    That is to say :    The evidence shows that if the plaintiff was entitled to recover at all, he was entitled to recover that amount and no more.

Some other exceptions were taken by the defendants' counsel during the trial, but upon careful examination thereof we fail to find that they are material to the question in issue, and hence they need not be particularly considered.

The evidence is sufficient to sustain the verdict.

Exceptions overruled, petition for new trial denied, and case remanded for judgment on the verdict.

*William M. P. Bowen*, for plaintiff.

*Franklin P. Owen*, for defendants.